ENTERED
NOV 12 2009
M.N.S.

FILED
at ___ O'clock & ___ min ___ M
NOV 1 2 2009
United States Bankruptcy Court
Columbia, South Carolina

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:

Marguerite Gilbert Ruffin,

Debtor(s).

C/A No. 09-04835-JW

Chapter 13

ORDER

This matter comes before the Court upon Marguerite Ruffin's (Debtor) motion to convert her case to a case under Chapter 11 ("Motion"). East Bay Air, LLC ("East Bay") filed an objection. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the determination of whether to grant or deny a motion for conversion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## FINDINGS OF FACT

The following facts are based on the parties' stipulations and/or the Court's findings made at the hearing:

1. In December 2003, Debtor's husband, Thomas Ruffin ("Ruffin"), who is not a debtor in this case, executed a note in the principal sum of $323,268 (the "Note"), payable to First Reliance Bank ("FRB"). To secure the payment of the Note, Debtor and Ruffin executed and delivered a mortgage to FRB encumbering their principal residence located at 515 Hammock Avenue, Murrells Inlet, South Carolina.

2. FRB commenced a foreclosure action after Debtor failed to pay off the loan prior to its maturity date in March 2006. The foreclosure action was resolved by an arbitration order

---

[1] To the extend any Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

that required Debtor and Ruffin to reduce the outstanding principal balance to $175,000, deposit $25,000 with FRB to set up an account from which monthly interest payments would be drawn, and pay interest only for one year with the full balance of the outstanding principal to be paid in full by October 2008.

3. Debtor paid down the principal amount of the loan to $175,000 but otherwise failed to comply with the terms of the arbitration order. As a result, the foreclosure action was recommenced in March 2009, at which time FRB sold and assigned all of its rights with respect to the loan and foreclosure action to East Bay. A foreclosure sale was scheduled for July 6, 2009.

4. Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on July 1, 2009.

5. Debtor filed her Chapter 13 plan and schedules on July 16, 2009. In her plan, Debtor proposes to pay $370 or more per month toward the arrearage on East Bay's claim and to make non-arrearage payments outside the plan. On Schedule A, Debtor states the collateral has a value of $560,000, and that the secured debt on the property amounts to $452,931. Debtor scheduled $21,000 as being the amount in arrears on East Bay's claim, and the total amount due as $227,931. However, the parties now agree that the obligation on the loan matured pre-petition and that the full amount is due.

6. Debtor's schedules further list general unsecured claims totaling $1569 and an unsecured priority claim of $2100.

7. Debtor's schedules list the IRS as a creditor, with no amount owed stated. The schedules do not indicate that the debts are contingent, unliquidated, or disputed. The IRS has filed a proof of claim in the amount of $466,955, of which $418,092 is identified as a general

unsecured claim. Debtor's plan provides that the obligation owed to the IRS is to be paid by a non-filing joint taxpayer.

## CONCLUSIONS OF LAW

Debtor seeks to convert her Chapter 13 case to Chapter 11 pursuant to 11 U.S.C. § 1307(d), which provides that "at any time before the confirmation of a plan under section 1325 of this title, on request of a party in interest or the United States Trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 or 12 of this title."

Case law addressing a debtor's ability to convert a case from Chapter 13 to Chapter 11 is sparse. However, it is well-established that § 706(a)[2] does not provide a party with an absolute right to convert his case from Chapter 7 to Chapter 11, 12, or 13; rather, a court grants such a conversion in its discretion. Marrama v. Citizens Bank of Mass., 549 U.S. 365 (2007); In re Holmes, 07-05770-JW, slip op. (Bankr. D.S.C. Mar. 19, 2008); In re Broad Creek Edgewater, LP, C/A No. 07-02546-dd, slip op. (Bankr. D.S.C. Jul. 18, 2007). Similarly, many courts have adopted that standard in considering conversion from a Chapter 13 case to a Chapter 11 case. See In re Henning, C/A No. 09-10421, slip op., 2009 WL 3673438, at *6 (Bankr. W.D. Tenn. Nov. 6, 2009) (stating "it is within the court's discretion to grant or deny a debtor's § 1307(d) request"); In re Lester, 409 B.R. 364, 370 (Bankr. W.D. Va. 2009) (stating that "[w]hile the principle that decisions on such motions to convert are discretionary with the bankruptcy court seems well-established, what is not clear, however . . . is what standards exist to guide or limit the court's exercise of its discretion in deciding such motions); Anderson v. United States (In re Anderson), 165 B.R. 445, 448 (S.D. Ind. 1994) (noting that § 1307(d) provides "no explicit

---

[2] Section 706(a) provides that a "debtor may convert a case under this chapter to a case under 11, 12, or 13 of this title at any atime, if the case has not be converted under section 1112, 1208, or 1307 of this title."

limitation" on a court's discretion).

In determining whether conversion is appropriate, some courts have considered whether the debtor "1) filed the initial bankruptcy petition and sought to convert in good faith, 2) is able to effectuate a plan, and (3) has caused prejudicial delay to creditors." In re Plagakis, C/A No. 03 CV 0728(SJ), slip op., 2004 WL 203090, at *5 (E.D.N.Y. 2004); see also Anderson, 165 B.R. at 448-49. While noting these guidelines, the Lester court indicated that such factors should not be read into § 1307(d), and concluded instead that § 1307(d) "contemplates some balancing between the competing interests of creditors and debtors." 409 B.R. at 372.

In her Motion, Debtor asserts that she sought relief under Chapter 13 with the intention of providing for the cure of the pre-petition arrearage owed to East Bay; however, Debtor now concedes she cannot formulate a confirmable plan within the parameters of Chapter 13, which would require the balance owed East Bay to be paid in full within the sixty month period as prescribed by § 1322(d). Debtor contends that she will be able to obtain confirmation of a Chapter 11 plan that provides for the payment of the obligation to East Bay. Debtor states that pursuant to § 1123(a)(5)(G), her Chapter 11 plan must provide for curing the default owed to East Bay, and she argues that the fact the obligation has matured pre-petition does not alter her entitlement to cure the default. Debtor maintains that a cure of the amount owed to East Bay does not constitute an improper modification under § 1123(b)(5).

East Bay objects on the basis that Debtor will not be able to effectuate a Chapter 11 plan. East Bay contends that the debt fully matured prior to the petition date, and § 1123(b)(5) prohibits Debtor from modifying East Bay's rights. East Bay also argues Chapter 11 serves no useful purpose to Debtor because if the case is converted, East Bay will immediately move for stay relief. Further, East Bay asserts it has not received any payment from Debtor since October

4

2007, and continues to be frustrated and prejudiced by Debtor's habitual delays.

After considering the parties' arguments and applicable case law, and noting that the only specific limitation on a conversion from Chapter 13 to Chapter 11 listed in the statute is that such a conversion must be made prior to the confirmation of a debtor's Chapter 13 plan, the Court finds that conversion of Debtor's case to Chapter 11 should be allowed. While conversion may not be appropriate if it appeared that there was no likelihood Debtor could file a confirmable Chapter 11 plan, the information presently before the Court does not mandate such a conclusion. Furthermore, at this time, the Court cannot find that Debtor has filed the Motion to improperly delay or prejudice East Bay.

With respect to the likelihood that Debtor can submit a confirmable Chapter 11 plan, the parties specifically dispute the issue of whether a Chapter 11 plan can provide for a fully matured obligation without violating the anti-modification provision of § 1123(b)(5). Section 1123(b)(5) provides that a Chapter 11 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." Debtor's asserts that she is not seeking to reduce the principal balance due, change the interest rate, or strip East Bay of its rights should she fail to comply with her Chapter 11 plan; rather, she is seeking to cure the arrearage as allowed by § 1123(a)(5).

The legal authority on this point is sparse, with each party relying primarily on one case. In re Lennington, 288 B.R. 802 (Bankr. C.D. Ill. 2003); In re Clay, 204 B.R. 786 (N.D. Ala. 1996); see also Henning, 2009 WL 3673438. In support of her position that she is not attempting to modify the debt, Debtor relies on Lennington, which found that a debtor's cure of arrearage,

5

which cannot be equated to a modification of a debt, is allowable. Id. at 805. East Bay points to Clay, which concluded, in the context of a motion for relief from stay, that the language of § 1123(b)(5) prohibits a debtor from curing a default in a balloon-type mortgage. Id. at 792. It appears to the Court that these decisions are fact specific and do not arise in relation to the question of the conversion to Chapter 11. Thus, at this time, the Court declines to make a determination in a summary fashion as to whether Debtor can file a confirmable Chapter 11 plan and believes that the issue should be more fully developed and addressed upon conversion of the case.

Accordingly, the Court finds that Debtor should be given the opportunity to convert and propose a Chapter 11 plan, and the Motion is granted. To avoid any further delay or prejudice to East Bay, Debtor shall file a plan and disclosure statement within thirty (30) days of the entry of this order.

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
November 12, 2009